UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **CHAD JOHNSON, CASEY** | * | **CIVIL ACTION NO. 2:20-cv-02741** |
| **JOHNSON, JERAMIE BAPTISTE** | * | |
| | * | **JUDGE: GREG G. GUIDRY** |
| **VERSUS** | * | |
| | * | **MAGISTRATE: JANIS VAN MEERVELD** |
| **JAMES RIVER INSURANCE** | * | |
| **COMPANY, RASIER, L.L.C., UBER** | * | |
| **TECHNOLOGIES, INC., AND** | * | |
| **MELVIN DILLON** | | |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

**DEFENDANTS' OMNIBUS OPPOSITION TO PLAINTIFF'S
<u>MOTIONS *IN LIMINE*</u>**

*MAY IT PLEASE THE COURT*

Plaintiffs' hastily submitted to this Court four (4) boilerplate Motions *in Limine*, all of which focus on a single, yet misconstrued, concept; that Defendants intend to introduce evidence of Plaintiff Jeramie Baptiste's familial relationship to Damien Labeaud ("Labeaud") and Baptiste's former working relationship with now disgraced and disbarred attorney Danny Keating ("Keating") in an effort to prove the subject auto accident was fraudulently staged. At this time, Defendants do not intend to introduce direct evidence that the subject motor vehicle accident was staged. However, it must be noted that the subject accident was a "hit and run" for which there were no independent witnesses. Thus, to the extent the jury finds Baptiste not credible, it would be reasonable for the jury to find that the subject accident was staged given Baptiste's history with Labeaud and a prior suspicious accident.

Moreover, what Defendants fully intend to explore at trial is the credibility issue Baptiste faces as it relates to the nature and extent of his claimed injuries in this matter. This critical issue

1

– whether Baptiste was truly as injured in the accident as he has portrayed himself to be – remains in dispute amongst the parties, and for good reason. Standing alone, the minimal impact of this auto accident would lead any defendant to question the medical causation aspect of Baptiste's injuries. Defendants' questioning of this single detail, however, is understandably not enough to allow them to introduce the information Plaintiffs seek to remain hidden from the jury. But when the information Defendants seek to introduce is understood globally, it becomes abundantly clear that the information regarding Baptiste's relationship with Labeaud and Keating becomes integral to Defendants' overall defense of Baptiste's claims. A review of the intertwined web of evidence (which Defendants will refer to globally as the "staged accident evidence") will be instructive and is provided below.

**FACTUAL BACKGROUND**

On February 1, 2017, Baptiste was involved in a motor vehicle accident at the corner of Louisa St. and Chickasaw St. in New Orleans, Louisiana. According to the police report, Baptiste claimed that while stopped at a stop sign on Chickasaw St., a tractor trailer operated by Norman Smith attempted to drive around the left side of Baptiste' vehicle in order to make a right turn in front of Baptiste, causing a collision. Conversely, Smith's statement in the police report indicates that he was lawfully traveling on Chickasaw St. and observed Plaintiff's vehicle parked on the right-hand shoulder. As Smith approached the intersection to turn right onto Louisa St., he observed Baptiste vehicle suddenly pull forward from the parked position, leading Smith to collide with Baptiste vehicle, which cut Smith off from his right-hand turn.[1] Smith's version of the accident perfectly describes the *modus operandi* Labeaud has admitted to using when staging

---

[1] See 2/1/2017 Uniform Motor Vehicle Traffic Crash Report attached hereto as Exhibit A.

accidents. That is, he would wait until a tractor trailer was about to make a turn or change lanes, and then speed up in order to cause a collision on the blind side of the tractor trailer.[2]

Approximately three (3) months later, on May 17, 2017, an identical accident occurred at this exact location – the corner of Louisa St. and Chickasaw St. In that accident, Damien Labeaud, Baptiste's cousin, intentionally collided with a tractor trailer which was turning from Chickasaw Street onto Louisa Street.[3] More specifically, in a grand jury indictment related to Operation Sideswipe, the May 2017 accident is described as follows:

> At approximately 1:57 p.m., Labeaud, while driving on Chickasaw Street, observed a 2017 Peterbilt tractor-trailer…turning on Louisa Street, and Labeaud intentionally collided with the tractor-trailer.[4]

Baptiste's familial connection to Labeaud, coupled with the undeniable similarities between Baptiste's February 2017 accident his cousin fraudulently staged and the accident three months later already provide Defendants with ample reason to question the veracity of Plaintiff's statements regarding the February 2017 accident and, therefore, question Baptiste's credibility altogether. However, the web spreads even further.

As this Court is aware, in connection with Operation Sideswipe, a number of personal injury attorneys in Louisiana have been identified as co-conspirators in the staged accident scheme in which Labeaud was involved. Once of the main attorneys identified by federal prosecutors, and who recently pled guilty to his involvement, is Daniel Keating ("Keating").[5] Keating has admitted to working with Labeaud on a number of occasions to coordinate the staged accidents.[6] In exchange for payments made by Keating to Labeaud to stage the accidents, Labeaud would direct

---

[2] See Factual Basis as to Damian Labeaud at p. 3 attached hereto as Exhibit B.
[3] See Factual Basis as to Marvel Francois at p. 4 attached hereto as Exhibit C.
[4] See Indictment for Conspiracy to Commit Mail Fraud, Mail Fraud, and Notice of Forfeiture at p. 23 attached hereto as Exhibit D.
[5] See Factual Basis regarding Danny Patrick Keating, Jr. attached hereto as Exhibit E.
[6] Id. at p. 2.

all participants to Keating for legal representation in their personal injury claims and/or lawsuits. Indeed, in the May 2017 staged accident described above, Keating represented the "injured parties" in their subsequent personal injury lawsuit and fraudulently obtained settlement amounts for each party.[7]

During Baptiste's deposition in this matter, he disclosed three prior accidents, one in 2009; another in 2014; and the February 2017 accident described above. Attorney Rick Kohnke represented Baptiste in the first two accidents. It is commonplace for an individual involved in multiple auto accidents over their life to retain the same personal injury attorney to represent them in each claim and/or lawsuit if the individual believes that attorney has adequately represented their interests. Indeed, Kohnke is currently enrolled as counsel of record in this instant lawsuit and ultimately enrolled as counsel of record in Baptiste' lawsuit stemming from the February 2017 accident, further indications of Baptiste's confidence in Kohnke as his legal representative. However, it is important to note that Kohnke was not Baptiste's first attorney of record in the lawsuit stemming from the February 2017 accident – that position originally belonged to Keating. It was only after Keating first became a target of the federal investigation into the staged accidents in early 2019 that Baptiste substituted Kohnke in as counsel of record in that matter. Less than three (3) months later, that lawsuit was settled for a nominal amount.

Standing alone, this evidence can be divided into three separate connections: the relationship between Labeaud and Keating; the relationship between Labeaud and Baptiste; and the striking similarities between Baptiste's February 2017 accident and the May 2017 accident Labeaud admittedly staged with Keating. When examining the singular connections in a vacuum, as Plaintiffs will likely implore this Court to do, each seems far too attenuated to the facts and

---

[7] See Petition for Damages filed by Keating on behalf of Jeramie Baptiste and Harry Johnson attached hereto as Exhibit F.

issues presented in this matter to warrant introduction to the jury. This is undoubtedly the desired outcome of Plaintiffs' decision to file four (4) distinct Motions *in Limine* so as to divorce the issues from one another in the Court's mind. However, these connection must not be examined in such a way. This Court must view the forest, and not just the trees. It is through this more holistic view that questions surrounding Baptiste's credibility, and more specifically questions regarding his truthfulness as to the extent of his injuries allegedly sustained in the subject accident, become not only genuine, but verifiable.

A key issue at trial will be medical causation with respect to the injuries Baptiste claims as a result of the 2019 accident. At trial Baptiste will attempt to relate a cervical spine injury, a lumbar spine injury, and a right shoulder surgery to that 2019 accident.[8] Not coincidentally, Baptiste has suffered almost identical injuries in his prior accidents. The 2009 accident involved injuries to Baptiste's neck or back. Following the 2014 accident, Baptiste sought treatment for neck pain and lower back pain. However, he stopped treating after only one visit because his attorney, Rick Kohnke, could not find any insurance coverage to pursue in litigation.[9] Finally, the 2017 accident at Chickasaw and Louisa also caused Baptiste to suffer a neck and low back injury. He received several months of active treatment in 2017 for those injuries but suddenly stopped even though he was still experiencing 6/10 neck pain and 7/10 lower back pain.[10] Baptiste will undoubtedly deny he was still experiencing any neck or low back pain at the time of the 2019 accident. Should the jury believe him? That will, of course, depend on whether the jury finds Baptiste credible. James River is therefore entitled to challenge Baptiste's credibility and the staged accident evidence is therefore relevant and admissible.

---

[8] See Jeramie Baptiste Discovery Responses at p. 4 (Response to Interrogatory No. 7) attached hereto as Exhibit G.
[9] See relevant portion of certified medical records from The Health Care Center attached hereto as Exhibit H.
[10] See relevant portion of certified medical records from New Orleans East Medical Rehab attached hereto as Exhibit I.

## LAW AND ARGUMENT

First, Plaintiffs' Motions *in Limine* only reference F.R.E. Arts. 401, 402 and 403 as the legal basis for their requests to limit Defendants' ability to discuss Baptiste's relationship with Labeaud and Keating or the suspicious nature of his 2017 motor vehicle accident and related litigation. In citing to these articles, Plaintiffs attempt to argue that the staged accident evidence "is in no way probative of the facts of the accident and whether it caused Plaintiffs' injuries and damages." This sentence, which in some form or another is reiterated in all four motions, is the extent of Plaintiffs argument in support of their Motions *in Limine*. There is not a single supportive case referenced by Plaintiffs; nor is there any cognizable explanation as to how the staged accident evidence is irrelevant and more prejudicial than probative. In other words, Plaintiffs' Motions *in Limine* amounts to nothing more than a plea to this Court to rule in Plaintiffs' favor based solely on a "because I said so" argument. The law requires more than bald, dogmatic promulgations from Plaintiffs before the substantive value of their Motions, if any exists, can be considered. "Evidence should not be excluded through a motion *in limine* unless it is clearly inadmissible on all potential grounds."[11]

Irrespective of the absence of even the slightest hint of persuasive advocacy, Plaintiffs' Motions completely ignore the more pivotal evidentiary principles governing the admissibility discussion surrounding the staged accident evidence. Namely, the interplay of Arts. 401-403 with Arts. 607 and 608. Indeed, the Fifth Circuit has recognized that Rule 404(b) **does not apply to**

---

[11] *See, Ogden v. Cozumel, Inc.*, 18-CV-00358, 2019 WL 5295495, at *1 (W.D. Tex. 2019) (citing *Rivera v. Salazar*, 2008 WL 2966006, at *1 (S.D. Tex. 2008)); *Kelly v. Patel*, No. 1:20-CV-01291, 2021 WL 2460560, at *1 (W.D. La. June 16, 2021)

**evidence that is used for impeachment purposes.**[12] Moreover, "although Rule 404(a) *generally* excludes evidence of a person's character 'for the purpose of proving action in conformity therewith on a particular occasion,' it authorizes an exception for evidence of a witness's character, as provided in Rules 607–609.[13]

More specifically, Art. 608(b) provides the foundation for admission of extrinsic evidence concerning a particular witnesses' credibility and provides that the "court may, on cross-examination, allow them to be inquired into if they are probative of the character for truthfulness or untruthfulness…of the witness."[14] In federal jurisprudence dating back over half a century, it has been recognized that:

> The credibility of the witness is always relevant in the search for truth and a great latitude is allowed in the cross-examination of an interested party who takes the witness stand. There is no obligation imposed upon the court to protect a witness from being discredited. Its only duty is to protect him from questions which go beyond the bounds of relevancy merely to harass, annoy or humiliate him[15]…Evidence challenging directly the truth of what the witness has said about matters material to the issue on trial, cannot be called collateral and immaterial to the issue of the credibility of the witness, and it is admissible for that purpose.[16]

As it relates to the actual evidence at issue here, federal courts across the country, have routinely upheld the notion that evidence concerning prior similar injuries may be admissible for both substantive and impeachment purposes.[17] Further, "[w]here it has been proved that a party

---

[12] *United States v. Bustamente,* 45 F.3d 933, 945 (5th Cir.1995)
[13] Fed.R.Evid. 404(a)(3).
[14] Fed. R. Evid. 608
[15] *Atkinson v. Atchison, Topeka & Santa Fe Ry. Co.,* 197 F.2d 244, 246 (10th Cir. 1952), citing, *Alford v. United States*, 282 U.S. 687, 51 S.Ct. 218, 75 L.Ed. 624; *United States v. Klein*, 7 Cir., 187 F.2d 873; *Kroger Grocery & Baking Co. v. Stewart*, 8 Cir., 164 F.2d 841; Stolte v. Larkin, 8 Cir., 110 F.2d 226.
[16] *Atkinson* 197 F. 2d at 246, citing See United States v. Klein, 7 Cir., 187 F.2d 873; Simon v. United States, 4 Cir., 123 F.2d 80; *United States v. Buckner*, 2 Cir., 108 F.2d 921; *United States v. Manton*, 2 Cir., 107 F.2d 834; McKelvey on Evidence, Fifth Edition, Section 331; 58 Am.Jur.Witnesses, Sections 623-626; *see also, King v. Univ. Healthcare Sys., L.C.,* No. CIV A 08-1060, 2009 WL 2222700, at *1 (E.D. La. July 24, 2009) (Under Rule 608(b), a witness may be cross-examined concerning "instances of misconduct that are clearly probative of truthfulness or untruthfulness, such as perjury, fraud, swindling, forgery, bribery, and embezzlement…The classic example of a permissible inquiry would be an incident in which the witness had lied.")
[17] *Couch v. Wal–Mart Stores, Inc.,* 191 F.3d 455 (7th Cir.1999) (unpubl.) (citing *O'Shea v. Jewel Tea Co.,* 233 F.2d 530, 532 (7th Cir.1956)).

brought previous claims which were similar in nature and *fraudulent,* most courts have admitted the evidence of the former claims on the ground that it is strongly relevant to falsity of the current claim.[18]

The staged accident evidence centers on Baptiste's previous claim for personal injuries very similar to the injuries alleged in the subject litigation. Again, Defendants' question the veracity of Baptiste's claimed injuries in this matter given both the objectively minimal impact between the vehicles, but also the suspicious nature of Baptiste's 2017 motor vehicle accident. Defendants submit that the staged accident evidence is more than sufficient to constitute a colorable and persuasive argument that Baptiste may not be forthright in his testimony with respect to the extent of his alleged injuries, a critical element of Baptiste's claim that Defendants are entitled to explore and question not only throughout discovery, but at trial. Moreover, the jury should be given the opportunity to consider Baptiste's credibility and how it may affect their judgment as to whether the subject accident, which was a "hit and run", was staged. This is particularly true if additional evidence is uncovered before trial begins. Accordingly, the staged accident evidence is highly relevant to the issues of medical causation and Baptiste's credibility, both of which go hand and hand.

## CONCLUSION

Plaintiff's deceptive tactic of placing each connection in its own Motion *in Limine* should not prevent this Court from seeing the forest through the trees. The "forest" this Court should actually see is a combination of several individual facts concerning Baptiste's 2017 auto accident that clearly support an argument that it was staged and, thus, Baptiste was untruthful about that

---

[18] *Bunion v. Allstate Ins. Co.,* 502 F.Supp. 340, 341–342 (D.C.Pa. Nov. 21, 1980) *Reed v. Tokio Marine & Nichido Fire Ins. Co.*, No. CIV.A. 09-0676, 2010 WL 2560487, at *1 (W.D. La. June 24, 2010)

accident. With this argument in mind, it becomes clear just how relevant, but also critical, the staged accident evidence is to Defendants' medical causation defenses related to the injuries Baptiste now claims are related to the subject accident. While the principles espoused in Arts. 401 – 403 are undoubtedly important general parameters for this Court to consider, the more pointed framework found in Arts. 607 and 608 directly address the admissibility of the staged accident evidence and support the admissibility of the evidence, at least on cross-examination, at trial. Defendants, therefore, respectfully request that Plaintiff's Motions *in Limine* concerning the staged accident evidence be denied.

Respectfully submitted,

    */s/ Travis B. Wilkinson*
Paula M. Wellons, La. Bar No. 19028
Jared A. Davidson, La. Bar No. 32419
Travis B. Wilkinson, La. Bar No. 28806
TAYLOR, WELLONS, POLITZ & DUHE, APLC
1555 Poydras Street, Suite 2000
New Orleans, Louisiana 70112
Telephone: (504) 525-9888
Facsimile: (504) 525-9899

**Counsel for James River Insurance Company**

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that I electronically filed the foregoing pleading with the Clerk of Court by using the CM/ECF system which will send a notice of electronic filing to all counsel of record. I further certify that I e-mailed and/or mailed the foregoing document and the notice of electronic filing by U.S. first class mail to the non-CM/ECF participants appearing in this case, if any, on this 29th day of June, 2021.

                                        */s/ Travis B. Wilkinson*
                                 TAYLOR, WELLONS, POLITZ & DUHE, APLC